UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JENNIFER REIMER,<br><br>Plaintiff,<br><br>v.<br><br>THE CENTER FOR COUNSELING AND HEALTH RESOURCES; et al.,<br><br>Defendants. | Case No. C07-1123 MJP<br><br>ORDER GRANTING PLAINTIFF'S MOTION ON CPA CLAIM AND DENYING DEFENDANTS' MOTION ON CPA CLAIM |

This matter comes before the Court on the parties' cross-motions for summary judgment concerning Plaintiff's Consumer Protection Act claim. (Dkt. Nos. 47 & 177.) After reviewing the motions, responses, replies, and all papers submitted in support thereof, and after hearing oral argument from the parties, the Court GRANTS Plaintiff's motion and DENIES Defendants' motion. The Court's reasoning is set forth below.

**Background**

In 2005 and 2006, Ms. Reimer sought and received treatment from The Center for Counseling and Health Resources ("The Center"). She participated in three successive intensive treatment programs and later received additional outpatient services. Before beginning the intensive programs, The Center required Ms. Reimer to sign an agreement that stated: "The Center will not bill insurance for services incurred during [the] intensive and [Plaintiff] agree[s] to self-pay the entire cost of the intensive." (Dkt. No. 187-2 at 9, 11.) Ms. Reimer paid the full cost of the intensive programs up-front.

Ms. Reimer is a California resident and her insurance carrier is Blue Cross of California. The Center, located in Washington state, is an in-network participating provider with Premera

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT: CPA CLAIM— 1

Blue Cross. Through the National BlueCard program, Ms. Reimer is entitled to in-network benefits in Washington. (Fierro Dep. at 70, Dkt. No. 187-2 at 155.)

When it signed the participating provider contract with Premera Blue Cross, The Center agreed that it would not bill any enrolled participant "for services provided pursuant to this contract" and agreed to "bill [Premera] directly after covered services are provided to enrollees[.]" (Dkt. No. 114-4 at 8-10.) This contract applies to "services provided to enrollees covered by a subscriber agreement, including those covered under programs of other Blue Cross and Blue Shield Plans which have a reciprocal agreement directly with [Premera] or through the Blue Cross and Blue Shield Association." (Id. at 12.) The BlueCard program is just such a reciprocal agreement. (Fierro Dep. at 70, Dkt. No. 187-2 at 155.) There is no evidence supporting Defendants' assertion that The Center "was not in the BlueCard network" when Ms. Reimer began her treatments. (L. Jantz Decl. at ¶2, Dkt. No. 178-4 at 1.)

It is undisputed that the intensive program as a treatment package is not covered by Ms. Reimer's insurance policy. However, the individual services provided as part of the intensive program can be itemized and any services covered by insurance can be identified. (Rollins Dep. at 98-101, Dkt. No. 114-2 at 14-15.) After her treatment, The Center provided Ms. Reimer with the itemized information necessary to submit insurance claims for reimbursement. (See Dkt. No. 178-4 at 2.) Blue Cross of California has reimbursed Ms. Reimer for some of the intensive treatment services, providing undisputable evidence that a portion of those services provided as part of the intensive treatment program were indeed covered by her insurance policy. ("Claim Payment Report," Dkt. No. 114-3 at 16-23.)

**Analysis**

The Washington False Claims Act prohibits any healthcare provider from collecting "an amount from an insured knowing that to be in violation of an agreement or contract with a health care payor to which the provider is a party." RCW § 48.80.030. The Center violated its agreement with Premera Blue Cross when it required Ms. Reimer to pay for the intensive program

services that were covered by her policy instead of billing the company directly. The contract makes no exception for "packages of services" that include both covered and uncovered treatments. It says simply that the provider must "bill [Premera] directly after covered services are provided to enrollees[.]" (Dkt. No. 114-4 at 8-10.)

I. Consumer Protection Act ("CPA")

To succeed on her CPA claim, Ms. Reimer must show: (1) a deceptive act (2) occurring in trade or commerce (3) that impacts the public interest, and (4) injury (5) caused by the deceptive act. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 791 (1986). The Court need not find a violation of the Washington False Claims Act for Plaintiff to succeed on her CPA claim. The False Claims Act merely supplies the public policy for measuring the deceptive nature of The Center's billing practices.

Defendants deceptively concealed their responsibility to bill Ms. Reimer's insurance company directly for covered services and instead required Ms. Reimer to pay for those services before receiving treatment. Defendants have deliberately created a package of services, the intensive treatment program, that includes both covered and uncovered services. Despite the portions of the program that were covered by Ms. Reimer's insurance policy, Defendants informed Ms. Reimer that the program as a whole was not covered. This representation, when combined with the requirement that Ms. Reimer pay for the entire intensive package up-front, failed to reveal a material fact – that The Center is obligated by contract and by state law to submit all claims for covered services directly to Premera instead of billing the patient. Defendants' unfair and deceptive act occurred in the course of their business. See State Farm Fire and Cas. Co. v. Huynh, 92 Wn.App. 454, 458 (1998) ("entrepreneurial aspects of medical practice" are part of commerce and subject to the CPA).

Ms. Reimer has also shown that this act affects the public interest. For this factor, the Court should consider whether the act constitutes a pattern of conduct that presents a real and substantial potential for repetition. Hangman Ridge Training Stables, Inc, 105 Wn.2d at 790. As

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT: CPA CLAIM— 3

1  recently as March 17, 2008, Defendants' website, advertised to the general public, indicated that
2  up-front payment for intensive services is common practice at The Center. (Dkt. No. 51-2 at 15
3  ("The Center does not bill to insurance for intensives but can provide a detailed accounting of
4  services used for possible self-submittal to insurance companies.").) The Center's 30(b)(6)
5  witness, Tracey Rollins, confirmed this policy. (Rollins Dep. at 80-86, 94-95, Dkt. No. 187-2 at
6  32-34 (agreeing that "The Center would typically require the patient to pay up front for all of the
7  intensive and then identify with the client the services that might be covered by their insurance so
8  the patient could bill themselves for the insurance" regardless of "whether the Center had a
9  participating provider contract with the insurance company of the patient").) The policy applies
10 to multiple intensive treatment programs offered by The Center. (See Dkt. No. 187-2 at 138-
11 141.) This billing practice affects every patient seeking intensive treatment from The Center
12 whose insurance policy covers some portion of the intensive services provided. As such, the
13 practice presents a substantial potential for repeating the harm suffered by this plaintiff.
14      Ms. Reimer has also shown that Defendants' deceptive act caused her actual injury. If
15 Defendants had directly billed Ms. Reimer's insurance company for the intensive services covered
16 by her policy, Ms. Reimer would never have been required to pay for those services and would
17 have retained the use of those funds. Although Defendants argue that Ms. Reimer suffers no
18 injury if her insurance company reimburses the payments, the loss of the use of those funds from
19 the time of payment to the time of reimbursement is a cognizable injury. Plaintiff need not show
20 monetary damages to succeed on her claim, "[a] loss of use of property" is sufficient. Mason v.
21 Mortgage Am., 114 Wn.2d 842, 854 (Wash. 1990).
22 II. Motions to Strike
23      Defendants' request to strike Plaintiff's exhibits for failure to comply with Fed. R. Civ. P.
24 26 is denied. (See Dkt. No. 203, Court's Order Denying Def.'s Mtn. to Dismiss.) The Court
25 need not address Plaintiff's motion to strike portions of Ms. Jantz's, Ms. Tran's and Mr.
26 Plunkett's declarations or Defendants' motion to strike Mr. Messick's declaration because the
27

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT: CPA CLAIM— 4

Court did not rely on the disputed evidence in reaching its decision.

**Conclusion**

Plaintiff succeeds on her Consumer Protection Act claim and her motion for partial summary judgment is GRANTED. Defendants' motion for partial summary judgment is DENIED. The Clerk is directed to send a copy of this order to all counsel of record.

Dated: July 25, 2008

*[signature]*

Marsha J. Pechman

U.S. District Judge